SAMUEL L. WARNER

*v.*

JAMES L. SCOTT *et al.*

1. VENDOR'S LIEN—*waiver by taking security.* Where a party holding bonds for deeds to six 40-acre tracts of land, sold the land and received payment for four of the tracts, and the purchaser gave security for the payment of the purchase money of the two remaining tracts by leaving the title bonds with the agent of the vendor, by which the latter remained in control of the title: *Held,* that the vendor could not maintain a bill to

enforce a lien for the purchase money, as he had waived his lien by taking the security.

2. SAME—*lost by vendor's act of repudiation.* The complainant, being the holder of six bonds, each for the conveyance of 40 acres of land, situate in a body, sold the same, the purchaser to assume the payment of the purchase money due on the bonds, and to pay complainant the balance of the price agreed upon. The purchaser paid all he had agreed to pay on the four south 40s except thirty-two dollars, which was added to the price of the two north 40s. The agent of complainant on two occasions made out notes for the purchaser to sign for the balance due, which was refused on the ground that the sum was too large and the interest therein provided was not in accordance with the contract, the purchaser otherwise never having refused to perform his contract of purchase, which was a verbal one. The purchaser had also left with the complainant's agent two of the title bonds as a security for the payment of the remaining purchase money. The circuit court dismissed complainant's bill to enforce a vendor's lien on the whole premises: *Held,* that the decree was proper; that as to the four tracts the bill would not lie, as the purchase money was paid, and as to the other tracts, the complainant having repudiated the contract himself by requiring notes different from the agreement, he was not entitled to maintain the bill.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. JAMES STEELE, Judge, presiding.

Messrs. HENRY & READ, for the plaintiff in error.

Messrs. FICKLIN & PETERSON, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery in the Coles circuit court, to enforce a vendor's lien on certain tracts of land of 40 acres each, therein described.

The cause was heard on bill, answer, replication and proofs, and on the hearing the bill was dismissed, and a decree against complainant for the costs.

To reverse this decree he brings the record here by writ of error, and insists the decree was erroneous and should have been rendered for complainant.

It appears that one McAcheron had purchased of the Illinois Central Railroad Company, taking their separate bond for title, six forties, as they are called, lying in a body in the form of a parallelogram, the east and west line being 160 rods long, and the north and south line 240 rods, making in all 240 acres, all in the same section, township and range. The two north forties would be properly designated as the south half of the northeast quarter, and the other four would be the southeast quarter of the section.

McAcheron had agreed to pay the company fourteen dollars and eighty cents per acre for each tract. He sold the contract to the plaintiff in error on the 7th of December, 1864, after having been in possession a few months, making some improvements thereon. Plaintiff in error took possession and held until May 1, 1865. On the 3d of March preceding he contracted with the agent of George W. Scott, now deceased, to sell three forties to him for forty dollars per acre, including the amount due the railroad company, making the amount to be paid plaintiff twenty-five dollars and twenty cents per acre, or about four thousand dollars for the four south forties. This amount, it is admitted by complainant in his bill, was duly paid by Scott in his lifetime, and the railroad bonds were handed over to him.

The purchase price of the two north forties would be two thousand and sixteen dollars, but as there were thirty-two dollars unpaid on the south forties, this amount ·was added, so that two thousand and forty-eight dollars was the amount to be paid for the north forties, in two equal payments, one at twelve and the other at eighteen months, with six per cent interest, and as security complainant was to retain the railroad contract or bond for those forties in lieu of a mortgage on them. W. W. Gill, the agent of complainant, was to prepare these notes by the next morning, to be taken by respondents, James L. Scott and James Boalman, the agents of George W. Scott, to the latter for his signature,

he then being confined by sickness, and when signed to be returned to Gill.

The possession of all the land was delivered to Scott except the northeast forty, and on the northwest forty complainant had a crop growing, the possession of which he was to retain until it could be harvested.

In delivering the railroad bonds or contracts to Gill for the north forties, as security for their payment, there was delivered to him, by mistake, the bonds for the two middle forties, which would be the north half of the southeast quarter of the section, for which Scott had fully paid, and the mistake was not discovered until after his death, when his administrators, the respondents, went to make the payments to the railroad company on the south forties, when it was discovered that they had the bonds for the two north forties but not for the middle forties, for which they had paid complainant in full.

Gill, agent of complainant, prepared two sets of notes for Scott to sign, amounting in the aggregate to two thousand four hundred and fifty dollars, one lot calling for ten per cent interest and the other for six per cent, which Scott refused to sign on the ground that they were for a greater amount than was due and at a rate of interest exceeding the rate agreed upon. Whereupon complainant sent another lot of notes stipulating for the payment of the same amount of money (four hundred and fifty dollars) and for ten per cent interest, which Scott also refused to execute on the ground they were not according to the contract.

It appears when the mistake was discovered they offered to return the bonds for the north forties, demanding at the same time the bonds for the middle forties.

George W. Scott, deceased, in his lifetime took possession of the northwest forty by placing a tenant upon it, but after his death the tenants were told to pay rent to complainant, the respondents never having taken possession of it.

All the payments made by respondents to the railroad company have been made on the south forties, and no claim asserted to the north forties.

The bill is filed for a vendor's lien upon the south forties, which, by complainant's own admissions, have been fully paid for, by the payment of the four thousand dollars, the price agreed upon.

As to the north forties it is very clear the bill can not be entertained, for security has been taken for their price by leaving the railroad bonds therefor with Gill, the agent of complainant, by which complainant remained in control of the title. *Conover* v. *Warren,* 1 Gilm. 498 ; *Trustees of Schools* v. *Wright,* 11 Ill. 606 ; *Richards* v. *Leaming et al.* 27. id. 431.

But in regard to the north forties, whatever contract was made by complainant and Scott, was, as is manifest from the testimony, at the purchase price of two thousand and forty-eight dollars, and no more, for which notes were to be executed in equal amounts, one payable in twelve the other in eighteen months after date, with interest at six per cent per annum, and which contract it is not shown Scott, in his lifetime, or the respondents, since his death, ever refused to perform. But the contract was repudiated by complainant, as is shown by the fact that he caused his agent, Gill, to prepare notes greatly exceeding that amount, and at a greater rate of interest, for Scott to execute. This amounts to a repudiation of the contract really made, and is setting up another and different one, which the parties never made.

It is very clear there is no lien on the south forties, they having been fully paid for by complainant's own admission, and as to the north forties, complainant himself had repudiated that, and must suffer the consequences. Complainant had abundant time to prevent a forfeiture of the north forties, as that could not occur before November, 1868, and the refusal of the respondents to execute the notes sent out by Gill, which was in 1865, was notice to complainant to take care of those forties. It is very evident, from all the testimony, that Scott

Additional opinion of the Court.

contracted for them in good faith, on terms agreed upon, and there should have been no trouble about them had the proper notes been prepared by complainant to be executed by the respondents. Demanding, as complainant did, the execution of a contract different from the one made, was a virtual repudiation of the real contract.

Another ground might be insisted upon to sustain this decree, and that is, the case make by the bill is not sustained by the evidence; but we forbear any further discussion, being well satisfied the decree is right, and it must be affirmed.

*Decree affirmed.*

A petition for a rehearing having been filed in the foregoing case, the following additional opinion was filed as of the January term, 1873:

Per CURIAM: We have examined and considered the petition for a rehearing in this case, and, whilst satisfied with the views presented in the opinion, we will say in addition that the statute of frauds was set up in the answer, and, though not insisted upon in the argument, it was, in our opinion, a bar to the relief sought. On the whole case we perceive nothing to justify a change in the conclusions we reached.